1
2
3
4
5
6
7
8                           **UNITED STATES DISTRICT COURT**

9                           **EASTERN DISTRICT OF CALIFORNIA**

10

11    EMMANUEL SALGADO, GAEL GROB,          )   Case No.: 1:17-cv-0339-JLT
      DAVID GARCIA, and ANDRE WONG          )
12    behalf of themselves and all other similarly )   ORDER GRANTING PLAINTIFFS' MOTION
      situated,                             )   FOR PRELIMINARY APPROVAL OF THE
13                                          )   CLASS ACTION SETTLEMENT
                      Plaintiffs,           )
14                                          )   (Doc. 47)
               v.                           )
15                                          )
      T-MOBILE USA, INC., et al.,           )
16                                          )
                      Defendants.           )
17    _____ )

18          Emmanuel Salgado, Gael Grob, David Garcia, and Andre Wong assert T-Mobile USA is liable

19    for violations of wage and hour laws and seek to prosecute this action on behalf of themselves and all

20    other similarly situated employees of T-Mobile.  The parties have entered into a settlement agreement,

21    and Plaintiffs now seeks preliminary approval of the class action settlement.  (Doc. 47)

22          Plaintiffs seek: (1) conditional certification of a settlement class; (2) preliminary approval of the

23    settlement terms; (3) appointment of Plaintiffs as the class representatives; (4) appointment of the Law

24    Offices of Kevin T. Barnes, Law Offices of Raphael A. Katri, Law Offices of Sahag Majarian II, Moss

25    Bollinger LLP, Koul Law and Matern Law Group as Class Counsel; (5) approval of the class notice and

26    materials; (6) appointment of Rust Consulting, Inc. as the settlement administrator; and (7) scheduling

27    for final approval of the settlement.  (*See* Doc. 47-9) For the following reasons, Plaintiffs' motion for

28    preliminary approval of class settlement is **GRANTED**.

                                                    1

# BACKGROUND

Plaintiffs were employed as hourly-paid employees by T-Mobile USA, Inc.; T-Mobile US, Inc.; and MetroPCS Communications Inc. (Doc. 50 at 3) Plaintiffs worked in positions such as retail sales associates, mobile experts, sales leads, retail associate managers, and retail store managers. (*Id.* at 4, ¶ 4) According to Plaintiffs, their employers engaged in unlawful employment practices and:

a.  Failed to pay overtime wages at the appropriate overtime pay rate;
b.  Failed to pay straight time, minimum, overtime, and/or commission wages for all hours worked in a timely manner;
c.  Failed to provide executed commission agreements;
d.  Failed to provide all legally-requisite meal periods;
e.  Failed to authorize and permit all paid rest periods;
f.  Failed to pay meal and/or rest premium wages at the legal pay rate;
g.  Failed to reimburse for all work-related expenses;
h.  Failed to pay all accrued paid time off pay;
i.  Failed to maintain required records;
j.  Failed to timely furnish accurate itemized wage statements;
k.  Derivatively violated Labor Code §203;
l.  Independently violated Labor Code §203;
m.  Incurred penalties pursuant to Labor Code §§2698, et seq.; and
n.  Conducted unfair business practices.

(Doc. 50 at 5-6, ¶ 11) (emphasis omitted).

According to Plaintiffs, putative class members were the defendants' control and required to perform tasks without pay. (Doc. 50 at 20, ¶¶ 52-54) For example, Plaintiffs contend they were not compensated for "tasks [such] as responding to GroupMe texts, scheduling, picking up devices, making telephone calls, performing overrides/exchanges, submitting reports, management calls, and/or Small Business Prep." (*Id.*, ¶ 52) Plaintiffs contend this resulted in payment of "less than the legal minimum wage in the State of California." (*Id.*, ¶ 53)

In addition, Plaintiffs allege they were not timely paid all wages—including commissions and vacation wages— due to former employees. (*See* Doc. 50 at 5-6, 37-38) According to Plaintiffs, the defendants had "a consistent and uniform policy, practice and procedure of willfully failing to pay the earned wages of… former employees." (*Id.* at 36, ¶ 136) For example, they report Emmanuel Salgado "was terminated on August 10, 2016," but "was not paid final wages, including final commissions, until September 30, 2016." (*Id.* at 38, ¶ 144) Thus, Plaintiffs contend the defendants failed to pay putative class members "wages due and owing at the time of their termination and/or within seventy-two (72) hours of their resignation, and failed to pay those sums for up to thirty (30) days thereafter."

1   (*Id.* at 37, ¶ 137; *see also id.* at 38, ¶ 145)

2          On February 3, 2017, Salgado filed a complaint on behalf of himself and others similarly

3   situated for unlawful wage and hour practices against T-Mobile USA, Inc. in Kern County Superior

4   Court, Case. No. BCV-17-100243.  (Doc. 1 at 14)  The defendant filed a Notice of Removal on March

5   8, 2017, thereby initiating the action in this Court.  (Doc. 1)  Both prior to and following the filing of

6   the *Salgado* action in Kern County Superior Court, "several related actions were filed in, or removed

7   to, various other state and federal courts," including: *Garcia v. T-Mobile USA, Inc.*, filed on May 27,

8   2016 in Los Angeles Superior Court, Case No. KC068472 ("*Garcia*"); *Grob v. T-Mobile USA, Inc.*,

9   filed on June 14, 2019, in the Central District of California, Case No. 2:19-cv-06352 ("*Grob*"); and

10  *Wong v. T-Mobile USA, Inc.*, filed on January 29, 2019, in the San Bernardino County Superior Court,

11  Case No. CIVDS1902923 ("*Wong*").  (Doc. 47-1 at 8)

12          The parties report that "[d]ue to the number of overlapping claims in *Grob*, *Wong* and *Garcia*,

13  counsel in those cases agreed that counsel in *Salgado* could attempt to negotiate a global settlement in

14  all four actions."  (Doc. 47-1 at 8)  On November 7, 2019, Plaintiffs filed "a First Amended Complaint

15  based on or related to the operative pleaded facts in [*Salgado*] and *Grob*, *Wong* and *Garcia* Related

16  Actions."  (*Id.*; *see also* Doc. 50)  Specifically, Plaintiffs allege at T-Mobile: (1) failed to pay overtime

17  wages at the legal overtime pay rate, (2) failed to pay all wages, (3) failed to provide meal periods, (4)

18  failed to authorize and permit all paid rest periods, (5) failed to pay premium wages at the legal pay

19  rate, (6) failed to fully reimburse work expenses, (5) failed to pay paid time off, (8) failed to maintain

20  required record, (9) failed to timely furnish accurate itemized wage statements, and (10) engaged in

21  unfair business practices.  (*See generally* Doc. 50)

22          On August 22, 2019, the parties participated in a mediation with Jeff Krivis.  (Doc. 47-1 at 9)

23  Although the parties did not reach a settlement on the day of the mediation, they engaged in further

24  negotiations and "entered into an agreement that settled the Action and all of the Related Actions."

25  (*Id.*)  Thus, Plaintiffs report the claims in *Grob*, *Wong* and *Garcia* "have been accounted for and valued

26  in [the proposed] settlement."  (*Id.* at 8)  Plaintiffs now seek certification of a settlement class and

27  preliminary approval of the settlement terms.  (Doc. 47)  Defendant has not opposed the motion.

28  ///

                                                    3

# THE PROPOSED SETTLEMENT[1]

The parties "agreed on a settlement of $8,000,000 on a class wide, common fund basis with no claim form requirement and with no residual to revert to the Defendant." (Doc. 47-1 at 9; *see also* Doc. 48-1 at 9, Settlement ¶ 33) Defendant agrees to fund the Settlement for the class defined as follows:

> [A]ll persons employed by Defendant in California as hourly-paid, non-exempt employees who worked in retail locations, including but not limited to, Retail Sales Managers, Retail Assistant Managers, Retails Sales Associates, and Mobile Experts, or functionally equivalent positions at any time during the Class Period.

(Doc. 48-1 at 3, Settlement ¶ 6) In addition, the Class Period is defined as "the period from February 3, 2013, through the date of Preliminary Approval, or November 30, 2019, or the last day of the pay period in which the total number of workweeks of 1,045,295.92 increases by more than 10% (the 'Workweek Threshold Cutoff Date'), whichever occurs first." (*Id.*, Settlement ¶ 7)

## I.     Payment Terms

The settlement fund will cover payments to class members and payments to Plaintiffs for their roles as class representatives. (Doc. 48-1 at 9, Settlement ¶ 33) In addition, the Settlement provides for payments to Class Counsel for attorneys' fees and expenses, to the Settlement Administrator, and the California Labor & Workforce Development Agency. (*Id.* at 9-11, ¶¶ 33-38) Specifically, the settlement provides for the following payments from the gross settlement amount:

- Plaintiff Emmanuel Salgado will receive $15,000;

- Plaintiffs David Garcia, Gael Grob, and Andre Wong will receive $5,000 each;

- Class counsel will receive fees not to exceed $2,640,000) and litigation expenses not to exceed $70,000;

- The California Labor and Workforce Development Agency shall receive $225,000 from the award pursuant to PAGA;

- The Settlement Administrator will receive reasonable costs of administration, which are estimated to be $56,000.

(Doc. 48-1 at 3-10, Settlement ¶¶ 2, 8, 13-14, 29, 34-37)

---

[1] At the time Plaintiffs filed their motion for preliminary approval of the class settlement, they did not submit a fully executed agreement. (*See* Doc. 47-3 at 25-28) On October 30, 2019, Kevin Barnes filed a supplemental declaration to the motion and attached a fully executed "Joint Stipulation of Class Action Settlement and Release," including the signatures of all Plaintiff's counsel and proposed class representatives. (Doc. 48-1) Accordingly, the Court's citations herein are to the fully executed agreement.

After the identified deductions and payments, the remaining funds— the "Net Settlement Amount" — will be distributed to all participating class members. (Doc. 48-1 at 6, Settlement ¶ 15) Shares of the individual settlement payment for each class member will be determined "based upon the number of Workweeks a Class Member worked during the Class Period." (*Id.* at 11, Settlement ¶ 39) Specifically, the payments will be calculated as follows:

> 39(a)    The Claims Administrator will calculate the total number of Workweeks worked by each Class Member during the Class Period and the aggregate total number of Workweeks worked by all Class Members during the Class Period. Each terminated Class member, the total Workweeks will include six additional workweek credits to compensate for the claim for Waiting Time Penalties.

> 39(b)    To determine each Class Member's estimated share of the Net Settlement Amount, the Settlement Administrator will use the following formula: The Net Settlement Amount will be divided by the aggregate total number of Workweeks, resulting in the "Workweek Value."

> 39(c)    Each Class Member's share of the Net Settlement Amount will be calculated by multiplying each individual Class Member's total number of Workweeks by the Workweek Value. The Individual Settlement Payment will be reduced by any required deductions for each Class Members as specifically set forth herein, including employee-side tax withholdings or deductions.

> 39(d)    The entire Net Settlement Amount will be disbursed to all Class Members who do not submit timely and valid Requests for Exclusion. If there are any valid and timely Requests for Exclusion, the Settlement Administrator shall proportionately increase each Participating Class Member's share of the Net Settlement Amount according to the number of Workweeks worked, so that the amount actually distributed to the Settlement Class equals 100% of the Net Settlement Amount.

(Doc. 48-1 at 11-12, Settlement ¶ 39) Using this method, Plaintiffs report that the average settlement payment will be approximately $561, and the highest settlement payment will be approximately $1,698. (Doc. 47-1 at 15-16)

## II.    Releases

The Settlement provides that Plaintiff and Class Members, other than those who elect not to participate in the Settlement, shall release Defendant from the claims arising "from February 13, 2013 through the date of Preliminary through the date of Preliminary Approval, the Workweek Threshold Cutoff Date, or November 30, 2019, whichever comes first." (Doc. 48-1 at 7, ¶ 26) Pursuant to the Settlement, "Released Claims" include:

> [A]ll claims, rights, demands, liabilities, and causes of action, arising from, or related to, the claims alleged or which could have been alleged in the proposed First Amended Complaint based on or related to the operative pleaded facts in the Action and Related Actions, including: (i) all claims for unpaid minimum and overtime wages, however

asserted or accrued, including but not limited to failing to properly calculate the regular rate for overtime and failing to pay for off-the-clock work (such as the use of GroupMe or other cell phone applications while off-the-clock); (ii) all claims for failure to pay commissions correctly or failure to provide executed commissions agreements; (iii) all claims for failing to provide meal and rest breaks; (iv) all claims for failing to pay meal or rest break premiums or properly calculate the rate for meal and rest break premium pay; (v) all claims for the failing to timely pay wages upon termination; (vi) all claims for the failing to fully reimburse business expenses, including mileage and use of personal cellular phones; (vii) all claims for wage statement violations; (viii) all claims for failing to maintain accurate records; (ix) all claims for failing to accrue and pay "paid time off" and (x) all claims asserted through California Business & Professions Code §§ 17200, et seq. related only to the above Released Claims or as asserted in the applicable PAGA Notices to the LWDA, and California Labor Code§§ 2698, et seq. related only to the above Released Claims or as asserted in the applicable PAGA Notices to the LWDA.

(Doc. 48-1 at 7, Settlement ¶ 24)

In addition, the Settlement provides that Plaintiffs and Participating Class Members waive and relinquish, unknown claims including "any and all actions, suits, claims, demands, rights, liabilities, and causes of action which specifically relate to the Released Claims that Plaintiffs do not know of or suspect to exist in their favor, which, if known by any of them, might have affected their agreement to the Settlement." (Doc. 481-1 at 8-9, Settlement ¶ 39) Specifically, the Settlement provides:

With respect to Unknown Claims, as of Final Approval, Plaintiffs and Participating Class Members hereby expressly waive and relinquish, to the fullest extent permitted by law, insofar as the claims arise from, or are related to, the Released Claims, the benefits of section 1542 of the California Civil Code (as well as any and all provisions, rights, and benefits of any similar state or federal law), which states:

A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release, and that, if known by him or her would have materially affected his or her settlement with the debtor or released party.

Thus, if the facts relating to this Settlement are found hereafter to be different from the facts now believed to be true, the Release set forth in this Agreement will remain fully effective. The provisions of this paragraph also apply to the PAGA claims that are released by Class Members who opt-out of the non-PAGA portions of the settlement

(Doc. 48-1 at 8-9, ¶ 31) Thus, the releases by Plaintiffs and the Participating Class Members appear to be the same.

## III.    Objections and Opt-Out Procedure

Any class member who wishes may file objections or elect not to participate in the non-PAGA portion of the Settlement. (*See* Doc. 48-1 at 14-15, Settlement ¶¶ 50-51) The proposed Notice of Class Action Settlement ("the Notice") explains the claims that are released as part of the Settlement. (Doc.

48-1 at 37-38)  In addition, the Notice outlines the procedures to claim a share of the settlement, object to the settlement, or elect not to participate in the Settlement.  (*Id.* at 36-37)

## PRELIMINARY APPROVAL OF A CLASS SETTLEMENT

When parties settle the action prior to class certification, the Court has an obligation to "peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement."  *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).  Preliminary approval of a class settlement is generally a two-step process.  First, the Court must assess whether a class exists.  *Id.* (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)). Second, the Court must "determine whether the proposed settlement is fundamentally fair, adequate, and reasonable." *Id.* (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 2998)).  The decision to approve or reject a settlement is within the Court's discretion.  *Hanlon*, 150 F.3d at 1026.

## I.    Conditional Class Certification

Class certification is governed by Rule 23 of the Federal Rules of Civil Procedure, which provides that "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all."  Fed. R. Civ. P. 23(a).  Under the terms of the Settlement, the proposed Settlement Class is comprised of "all persons employed by Defendant in California as hourly-paid, non-exempt employees who worked in retail locations, including but not limited to, Retail Sales Managers, Retail Associate Managers, Retails Sales Associates, and Mobile Experts, or functionally equivalent positions at any time during the Class Period."  (Doc. 48-1 at 4)  Plaintiffs seek conditional approval of the class for settlement pursuant to Fed. R. Civ. P. 23, under which the Court may "make a conditional determination of whether an action should be maintained as a class action, subject to final approval at a later date."  *See Fry v. Hayt, Hayt & Landau*, 198 F.R.D. 461, 466 (E.D. Pa. 2000)).

Parties seeking class certification bear the burden of demonstrating the elements of Rule 23(a) are satisfied, and "must affirmatively demonstrate . . . compliance with the Rule."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011); *Doninger v. Pacific Northwest Bell, Inc.*, 563 F.2d 1304, 1308 (9th Cir. 1977).  If an action meets the prerequisites of Rule 23(a), the Court must consider whether the class is maintainable under one or more of the three alternatives set forth in Rule 23(b).  *Narouz v. Charter Communs., LLC*, 591 F.3d 1261, 1266 (9th Cir. 2010).

### A.    Rule 23(a) Requirements

The prerequisites of Rule 23(a) "effectively limit the class claims to those fairly encompassed by the named plaintiff's claims." *General Telephone Co. of the Southwest. v. Falcon*, 457 U.S. 147, 155-56 (1982).  Certification of a class is proper if:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). These prerequisites are generally referred to as numerosity, commonality, typicality, and adequacy of representation.  *Falcon*, 457 U.S. at 156.

#### 1.    Numerosity

A class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  This requires the Court to consider "specific facts of each case and imposes no absolute limitations." *General Telephone Co. v. EEOC*, 446 U.S. 318, 330 (1980).  Although there is not a specific numerical threshold, joining more than one hundred plaintiffs is impracticable.  *See Immigrant Assistance Project of Los Angeles Cnt. Fed'n of Labor v. INS*, 306 F.3d 842, 869 (9th Cir. 2002) ("find[ing] the numerosity requirement . . . satisfied solely on the basis of the number of ascertained class members . . . and listing thirteen cases in which courts certified classes with fewer than 100 members").  Here, Plaintiffs report that "[t]here are approximately 9,300 Class Members, all of which have been identified by Defendant's employment and payroll records."  (Doc. 47-1 at 21, emphasis omitted)  Therefore, the numerosity requirement is satisfied.

#### 2.    Commonality

Rule 23(a) requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality "does not mean merely that [class members] have all suffered a violation of the same pro-vision of law," but "claims must depend upon a common contention." *Wal-Mart Stores*, 131 S. Ct. at 2551.  Plaintiffs assert there are common questions of law and facts in this case, because the class members were subjected to the same policies as employees of Defendant.  (Doc. 47-1 at 21-22) According to Plaintiffs' counsel, common questions include:

> a.    Whether Defendant properly included all commissions, bonuses and prizes into the overtime rate as required by California law;

8

b. Whether Defendant required Class Members to work off the clock, including sending and responding to texts on the GroupMe app, without paying for all hours worked;

c. Whether Defendant had a valid meal period policy and whether paid an additional one hour of wages for the meal period violations;

d. Whether Defendant had a rest period policy that required Class Members to remain on the premises during their rest break in violation of California law and did not ever pay an additional one hour of wages for the rest period violations;

e. Whether Defendant had a rest period practice that did not allow for rest breaks and did not ever pay an additional one hour of wages for the rest period violations;

f. Whether Defendant failed to reimburse Class Members for all mileage expenses for the use of their personal vehicles as required by California law;

g. Whether Defendant failed to timely pay final wages due to former Class Members and/or pay waiting time penalties pursuant to Labor Code §203;

h. Whether Defendant failed to provide proper wage statements to Class Members pursuant to Labor Code §226(a);

i. Whether Defendant failed to accrue and pay all paid time off;

j. Whether Defendant subjected Class Members to Defendant's unlawful, unfair and/or fraudulent business acts or practices in the form of the violations described above; and

k. Whether Plaintiff and the Class Members are entitled to injunctive/declaratory relief.

(Doc. 47-2 at 4-5)  Further, Defendant "agrees that there are sufficient common questions to support creation of a Settlement class." (*Id.* at 5)  Therefore, the Court finds the commonality requirement is satisfied for purposes of settlement.[2]

### 3.     Typicality

This requirement requires a finding that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  The standards under this rule are permissive, and a claim or defense is not required to be identical, but rather "reasonably coextensive" with those of the absent class members. *Hanlon*, 150 F.3d at 1020.  "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct

---

[2] The Court presumes the parties will submit <u>evidence</u> to support the final approval.

9

which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal quotation marks and citation omitted); *see also Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1463 (9th Cir. 1995) (the typicality requirement is satisfied when the named plaintiffs have the same claims as other members of the class and are not subject to unique defenses).

Here, Plaintiffs alleged they were each employed by Defendants during the relevant period. (Doc. 50 at 4-5, ¶¶ 6-10)  Emmanuel Salgado was employed "as an hourly-paid Retail Sales Associate and hourly-paid Retail Associate Manager from approximately November 2010 to August 10, 2016 in Bakersfield, California."  (*Id.* at 4-5, ¶ 6)  Gael Grob worked for Defendant "as an hourly-paid Mobile Expert (formerly known as Retail Sales Associate) from approximately May 2015 to April 2019 in Santa Clarita, California."  (*Id.*, ¶ 7)  David Garcia was employed "as an hourly paid Retail Sales Associate from approximately February 2008 to November 2015 in Covina, California."  (*Id.*, ¶ 8) Finally, Andre Wong was also employed "as an hourly-paid Mobile Expert (formerly known as Retail Sales Associate) from approximately September 2010 to September 2018 in Montclair, California." (*Id.*, ¶ 10)  According to Plaintiffs, their claims are typical of the class because they "worked under the same policies and procedures and were paid according to the same pay plan for the entire period, as all other putative Class Members/PAGA aggrieved employee."  (Doc. 47-1 at 22-23)  Because it is undisputed that Plaintiffs were subjected to the same polices and application procedure as the Settlement Class Members, the typicality requirement is satisfied.

### 4.    Fair and Adequate Representation

Absentee class members must be adequately represented for judgment to be binding upon them. *Hansberry v. Lee*, 311 U.S. 32, 42-43 (1940).  Accordingly, this prerequisite is satisfied if the representative party "will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4). "[R]esolution of this issue requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000) (citing *Hanlon*, 150 F.3d at 1020).

///

### a. Proposed class representative

Plaintiffs each seek appointment as the class representatives, asserting that they "have no claims that are antagonistic to the Class." (Doc. 47-1 at 23) Further, the parties do not identify any conflicts between Plaintiffs and the putative class members. Thus, it appears Plaintiffs will fairly and adequately represent the interests of the class.

### b. Proposed class counsel

Pursuant to the Settlement terms, Kevin Barnes and Gregg Lander of the Law Offices of Kevin J. Barnes; Raphael Katri of the Law Offices of Raphael A. Katri; Matthew Matern of Matern Law Group, PC; Nazo Koulloukian of Koul Law Firm; Sahag Majarian, II of the Law Offices of Sahag Majarian II; and Dennis Moss and Ari Moss of Moss Bollinger LLP seek appointment as class counsel. (Doc. 48-1 at 3, ¶ 3) In addition, Kevin Barnes and Gregg Lander seek appointment as "Lead Class Counsel" in the action. (*Id.*, ¶ 4)

Plaintiffs report that the proposed class counsel are "very experience and qualified." (Doc. 47-1 at 23) According to Mr. Barnes, "The Plaintiffs' firms advanced as Class Counsel have substantial experience in wage and hour Class action cases and have been approved as Class Counsel in numerous other wage and hour Class actions." (Doc. 47-2 at 5-6, Barnes Decl. ¶ 6) In addition, Mr. Barnes observes that "Plaintiffs' attorneys … have aggressively litigated this matter for almost three years, have engaged in formal discovery including propounding and responding to written interrogatories, the production of documents, several depositions, briefing of the class certification motion and attending a formal all-day mediation." (*Id.* at 6, ¶ 6)

Raphael Katri reports that he is admitted to practice law in the states of California, Texas, and New York, and his "current law practice is devoted almost exclusively to employment law." (Doc. 47-6 at 3, ¶¶ 2-3) Mr. Katri asserts he has "actively participated in the prosecution and successful settlement of multiple wage and hour class action lawsuits and representative actions, helping to recover millions of dollars on behalf of the respective class members in those cases." (*Id.*, ¶ 4) He reports that by partnering with the Law Officers of Kevin T. Barnes, "both of [the] firms have and will continue to aggressively and competently represent the named plaintiff and the other aggrieved individuals in this case." (*Id.* at 4, ¶ 5)

Dennis Moss notes that he has been practicing employment and labor law since 1977, during which time he "handled numerous cases in all aspects of employment and labor law, including but not limited to numerous federal and state wage and hour class action cases, National Labor Relations Board proceedings, wrongful discharge litigation, discrimination cases, administrative appeals involving wage and hour and other employment issues, numerous arbitrations, and various other matters involving both traditional labor-law (union/ management law) and employment law issues in the non-union context." (Doc. 47-7 at 3, Moss Decl. ¶ 3) Mr. Moss stated his "litigation experience has included over twenty-five arguments in various courts of appeal, including the 9th Circuit, Federal Circuit, and the First, Second, Third, Fourth and Sixth Appellate Districts of the California Courts of Appeal." (*Id.*) In addition, Mr. Moss reports he been appointed as "lead counsel in dozens of class actions and collective actions over the last several years," in both federal and state court. (*Id.* at 3-4, ¶ 3)

Nazo Koulloukian reports he was admitted to the State Bar of California in June 2009, and is "a current member of the California Employment Lawyers Association (CELA)." (Doc. 47-8 at 3, Koulloukian Decl. ¶ 3) He also notes that he was "named as one of the Rising Stars for the Super Lawyers of Southern California during 2016, 2017, and 2018." (*Id.*) According to Mr. Koulloukian, his law firm "co-counsels with various other attorneys, all of whom are actively and continuously practicing in employment litigation, representing almost entirely employee plaintiffs, in both individual and class actions, in … Superior Courts throughout the State, in the Court of Appeal, and in various Federal courts." (*Id.* at 4, ¶ 4) Mr. Koulloukian reports that "more than half of [his] active caseload includes wage and hour class action cases." (*Id.*) Further, he asserts that he has co-counseled with Sahag Majarian, II (*id.*), who also seeks appointment as class counsel in this action.

Mr. Majarian reports he has been "in private practice primarily representing consumers against insurance companies and workers against their employers" since 1990." (Doc. 48-3 at 4, Majarian Decl. ¶ 3) He indicates that he "devoted a significant portion of my practice to employment law and class actions, and [has] been appointed co-class counsel for the plaintiffs in no less than 50 wage and hour class actions." (*Id.*) Further, Mr. Majarian has "participated in over 150 class action mediations," which involved "extensive preparation, development of thorough knowledge of the legal issues related

to certification and liability, and full immersion and participation in the mediation and negotiation process."  (*Id.* at 5, ¶ 4)

Finally, Matthew Matern reports he is "the principal of Matern Law Group, PC," which is "is a 23- attorney law firm that is actively and continuously practicing in employment litigation, almost exclusively representing employees in both individual and class actions in both state and federal courts throughout California."  (Doc. 48-4 at 4, Matern Decl. ¶ 2)  He asserts his law firm "is qualified to handle this litigation because the firm is experienced in litigating Labor Code violations in both individual and class action cases."  (*Id.*, ¶ 3) Mr. Matern reports he has "been involved in over 100 class action settlements, with many of them settling in the seven figure range."  (*Id.* at 5, ¶ 6)  In addition, he notes that he "represented clients in numerous wage and hour class action lawsuits that settled with per-class-member recoveries in a range similar to the anticipated per-class member recovery in the instant case."  (*Id.*) According to Mr. Matern, this "work has led [him] to be recognized as a Southern California Super Lawyer every year since 2009."  (*Id.*, ¶ 9)

Notably, Defendants do not oppose the requested appointments or assert Plaintiffs' counsel are inadequate to represent the interest of the class. Based upon the information provided regarding the experience of counsel, the Court finds proposed class counsel satisfy the adequacy requirement.

## B.    Certification of a Class under Rule 23(b)(3)

As noted above, once the requirements of Rule 23(a) are satisfied, a class may only be certified if it is maintainable under Rule 23(b).  Fed. R. Civ. P. 23(b); *see also Narouz*, 591 F.3d at 1266. Here, Plaintiffs assert that certification of the Class is appropriate under Rule 23(b)(3) which requires a finding that (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  (*See* Doc. 47-1 at 19-20)

Plaintiffs argue the predominance requirement is satisfied because "the main issues involve the legality of Defendant's compensation plans, meal and rest period policies, payment of meal and rest period premiums, expense reimbursement plan, and the validity of its wages statements."  (Doc. 47-1 at 21-22)  According to Plaintiffs, "these are all company policy questions that are uniform and can be proven by common objective evidence," including "Defendant's policies, payroll records, time records

and pay stubs given to all non-exempt employees." (*Id.* at 22) Further, it appears the superiority requirement is satisfied because resolving all Class Members' claims through this settlement would be superior to litigating each of the separate lawsuits filed. Therefore, the Court finds conditional certification of the proposed Settlement Class is proper under Rule 23(b)(3).

## II. Evaluation of the Settlement Terms

Settlement of a class action requires approval of the Court, which may be granted "only after a hearing and on finding that [the settlement] is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Approval is required to ensure settlement is consistent with Plaintiffs' fiduciary obligations to the class. *See Ficalora v. Lockheed Cal. Co.*, 751 F.2d 995, 996 (9th Cir. 1985). The Ninth Circuit identified several factors for the Court to evaluate whether a settlement agreement meets these standards, including:

> the strength of plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Staton*, 327 F.3d at 959 (citation omitted). Further, a court should consider whether settlement is "the product of collusion among the negotiating parties." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 458 (citing *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1290 (9th Cir. 1992)). Reviewing the settlement terms, "[t]he court need not reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute." *Class Plaintiffs*, 955 F.2d at 1291 (internal quotation marks and citation omitted).

### A. Strength of Plaintiffs' Case

In this action, Plaintiffs raised thirteen causes of action that the fact-finder would be required to evaluate on the merits. (*See generally* Doc. 50) The proposed settlement was reached following the exchange of written discovery and taking depositions, which allowed the parties to assess the strengths and weaknesses of the action. (*See* Doc. 47-1 at 14) Accordingly, this factor weights in favor of preliminary approval of the Settlement.

### B. Risks, Expenses, Complexity, and Likely Duration of Further Litigation

Approval of settlement is "preferable to lengthy and expensive litigation with uncertain

14

results." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004).  If the proposed settlement is not approved, the parties would have to engage in further litigation, including the related actions of *Grob*, *Wong* and *Garcia*.  Plaintiffs assert that in agreeing to settle,

> Plaintiffs took into account the risks that the Class would be certified, risks related to proof of their claims, and the strengths and weaknesses of Defendant's other defenses. Plaintiffs also took into account the possibility that if a settlement were reached after additional years of litigation, the great expenses and attorneys' fees of litigation would reduce the amount of funds available to Class Members for settlement. Furthermore, Plaintiffs also took into consideration the time delay and financial repercussions of liability trials, numerous damages trials, and the possibility of an appeal by Defendant.

(Doc. 47-1 at 18-19)  The time and expense of continued litigation could outweigh any additional recovery.  As Plaintiff observes, if this action had settled following additional litigation, fewer funds may be available to class members in the various actions.  (*See id.*)  On the other hand, the proposed settlement provides for immediate recovery.  Due to the risk of the claims of class members, this factor weighs in favor of preliminary approval of the Settlement.

## C.    Amount Offered in Settlement

The Ninth Circuit observed "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'"  *Officers for Justice v. Civil Serv. Commission*, 688 F.2d 615, 624 (9th Cir. 1982) (citation omitted).  Thus, when analyzing the amount offered in settlement, the Court should examine "the complete package taken as a whole," and the amount is "not to be judged against a hypothetical or speculative measure of what *might* have been achieved by the negotiators."  *Id.*, 688 F.2d at 625, 628.

The proposed gross settlement amount totals $8,000,000.  (Doc. 48-1 at 5, Settlement ¶13)  Given the time expended by parties in mediation and the continued negotiations prior to reaching this agreement, it appears the parties agree this amount reflects a fair compromise as to all of Plaintiffs' allegations.  Indeed, in executed agreement, the parties indicate: "The parties believe this Settlement Agreement is a fair, adequate and reasonable settlement of the Action and Related Actions."  (*Id.* at 20, ¶ 72)  Accordingly, the Court finds the amount offered supports preliminary approval of the Settlement.

## D.    Extent of Discovery Completed and Stage of the Proceedings

Plaintiffs report that the parties "engaged in formal discovery including propounding and responding to written interrogatories, the production of documents, several depositions, briefing of the

class certification motion and attending a formal all day mediation." (Doc. 47-1 at 14) According to Plaintiffs, "To prepare for the mediation, Defendant provided extensive documentation and data related to the claims asserted in this case as well as a number of work weeks, class size and other necessary information for Plaintiffs to create a damages exposure analysis." (*Id.* at 14-15) In addition, "Plaintiffs hired an expert economist to prepare for both the class certification motion as well as damage calculations and an exposure analysis for the mediation." (*Id.* at 15) Consequently, this factor supports preliminary approval of the Settlement.

### E.    Views of Counsel

In general, "[g]reat weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." *See Nat'l Rural Telecomms.*, 221 F.R.D. at 528. Here, Class Counsel assert that "the settlement with Defendant for the consideration and on the terms set forth in this Settlement is fair, reasonable, and adequate and is in the best interest of the Class Members in light of all known facts and circumstances, including the risk of significant delay and uncertainty associated with litigation, various defenses asserted by Defendant, and numerous potential appellate issues." (Doc. 47-2 at 6, Barnes Decl. ¶ 6) Similarly, Defendant indicated in the Settlement that it "is fair, adequate, and reasonable…" (Doc. 48-1 at 10, Settlement ¶ 71) Accordingly, the views of both Class Counsel and Defendant's counsel support preliminary approval of the Settlement.

### F.    Reaction of Class Members to the Proposed Settlement

Plaintiffs have agreed to the terms and executed the Settlement Agreement. (Doc. 48-1 at 25-28) However, the Settlement Class members have not yet received notice regarding the settlement terms. Therefore, this factor shall be revisited prior to final approval of the Settlement.

### G.    Collusion between Negotiating Parties

The inquiry of collusion addresses the possibility that the settlement agreement is the result of either "overt misconduct by the negotiators" or improper incentives of class members at the expense of others. *Staton*, 327 F.3d at 960. As the noted above, the parties first utilized an impartial mediator, and continued negotiations after the mediation with Jeff Krivis. (*See* Doc. 47-1 at 9, 13) Thus, it appears the agreement is the product of non-collusive conduct, and this factor weighs in favor of preliminary approval of the Settlement.

### H. Attorneys' Fees

Pursuant to the Settlement, Class counsel may request attorneys' fees "of not more than Two Million Six Hundred Forty Thousand Dollars ($2,640,000), which represents a third of the gross settlement.  (Doc. 48-1, Settlement ¶34)  The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark.  *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000).

In general, the party seeking fees bears the burden of establishing that the fees and costs were reasonably necessary to achieve the results obtained.  *See Fischer v. SJB-P.D., Inc.,* 214 F.3d 1115, 1119 (9th 2000).  Therefore, a fee applicant **must provide time records documenting the tasks completed and the amount of time spent on the action**.  *Hensley v. Eckerhart*, 461 U.S. 424, 424 (1983); *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 945-46 (9th Cir. 2007).  Currently, Class Counsel is requesting an award of 30% of the gross settlement fund, totaling $2,400,000.  (Doc. 47-2 at 31)  Because the percentage of the gross fund is within the accepted range outlined by the Ninth Circuit, this amount is approved preliminarily.  The Court will determine the precise amount of the fee award upon application by Class Counsel for approval of fees, supported by evidence related to the hours worked and tasks undertaken.

### I. Class Representative Enhancement

Incentive awards, or enhancements, for class representatives are not to be given routinely by the Court.  In *Staton*, 327 F.3d at 975, the Ninth Circuit explained:

> Indeed, '[i]f class representatives expect routinely to receive special awards in addition to their share of the recovery, they may be tempted to accept suboptimal settlements at the expense of the class members whose interests they are appointed to guard." *Weseley v. Spear, Leeds & Kellogg*, 711 F. Supp. 713, 720 (E.D.N.Y. 1989); *see also Women's Comm. for Equal Employment Opportunity v. Nat'l Broad. Co.*, 76 F.R.D. 173, 180 (S.D.N.Y. 1977) ("[W]hen representative plaintiffs make what amounts to a separate peace with defendants, grave problems of collusion are raised.").

In fact, "'excessive payments to named class members can be an indication that the agreement was reached through fraud or collusion.'"  *Id.* (citation omitted).  In evaluating the enhancement award to a class representative, a court should consider all "relevant factors including the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and

reasonable fears of workplace retaliation." *Staton*, 327 F.3d at 977.

The Settlement provides that Plaintiffs may apply to the District Court for class representative enhancements to be paid from the gross settlement amount. (Doc. 48-1 at 10, Settlement ¶ 35)  In particular, the parties agreed that the payments be $15,000 for Emmanuel Salgado and $5,000 each for David Garcia, Gael Grob, and Andre Wong.  (*Id.*)  The Settlement explains the payments are made "[i]n exchange for a general release, and in recognition of their efforts and work in prosecuting the Action and Related Actions on behalf of Class Members."  (*Id.*)

However, aside from Plaintiffs submitting to a deposition, they fail to identify any actions taken on behalf of the Settlement Class, or an explanation of how the class members benefited from these actions.  For example, Plaintiffs do not report whether, or to what extent, each assisted with written discovery in the action or estimate the number of hours they each spent meeting with Class Counsel.  Accordingly, the Court is unable to evaluate the reasonableness of requested awards now.  In seeking final approval, **Plaintiffs must provide evidence supporting the requested enhancement.** Nevertheless, the Court will preliminarily approve of a class representative enhancement in an amount ***up to*** $15,000 for Salgado and ***up to*** $5,000 for Garcia, Grob, and Wong.

## APPOINTMENT OF THE SETTLEMENT ADMINISTRATOR

The parties agreed that Rust Consulting, Inc. would serve as the Settlement Administrator, and Plaintiffs seeks approval of this appointment.  (Doc. 47-1 at 17; Doc. 48-1 at 8, Settlement ¶30) The Settlement administration duties include, but are not limited to: "printing, distributing, and tracking documents for this Settlement, tax reporting, distributing the Gross Fund, and providing necessary reports and declarations, as requested by the Parties."  (Doc. 48-1 at 8, Settlement ¶¶ 29; *see also id.* at 10, ¶ 36)  In addition, the Settlement Administrator will have the authority to receive objections and Requests for Exclusion, and determine the validity.  (*Id.* at 13-14, ¶¶ 45-48)  Rust Consulting expects to receive "reasonable costs of administration" from the Gross Settlement Amount, currently estimated to be $56,000.  (*Id.* at 10, ¶36)

Based upon the recommendation and request of the parties, Rust Consulting is appointed as the Settlement Administrator, and the settlement administration costs are approved up to $56,000. If the costs exceed the amount identified, the parties **SHALL** provide a declaration setting identifying the

costs before the Court will authorize additional costs to be taken from the Gross Settlement Fund.

## APPROVAL OF CLASS NOTICE

A class notice must satisfy the requirements of the Federal Rules of Civil Procedure, which provides the notice "must clearly and concisely state in plain, easily understood language" the following information:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). A class notice must be "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *See Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

## I.     Content of the Notice

Plaintiffs have submitted the proposed Notice of Class Action Settlement ("the Notice") to be distributed to the class members. (Doc. 48-1 at 33-38) Upon review of the terms in the Notice, the Court finds the content is adequate. Plaintiffs provide information regarding the background of the action and claims asserted. (*Id.* at 34-35) The Notice explains the terms and provisions of the Settlement, including the payments from the Gross Settlement Amount. (*Id.* at 35, 38) In addition, the Notice explains the rights and procedures to object to the Settlement or elect not to participate in the Settlement, and will include the applicable deadlines. (*Id.* at 36-37) Finally, the Notice explains the effect of the entry of judgment and settlement, including the release of claims. (*Id.* at 37-38)

## II.     Method and Administration of Notice Packet

Within twenty days of the date of service of this Order, Defendant shall "provide the Class List to the Settlement Administrator." (Doc. 48-1 at 12, Settlement ¶ 42) This information "will be formatted in Microsoft Office Excel and will include each Class Member's full name; most recent mailing address and telephone number; Social Security number; dates of employment in class positions; the respective number of Workweeks that each Class Member worked during the Class Period in class positions; and any other relevant information needed to calculated settlement payments." (*Id.* at 4, ¶ 5) Within fifteen days of receiving this data, the Settlement Administrator will

mail the Notice to all Class Members via regular First-Class U.S. Mail. (*Id.* at 12, ¶¶ 43) If any Notice is returned due to an incorrect address, the Settlement Administrator will re-mail the documents to a forwarding address that is provided, or perform search for a more current address and re-mail the Notice. (*Id.*, at 12-13 ¶ 44)

Class members who elect not to participate in the Settlement will have 45 days from date the Notice is mailed to postmark a written request for exclusion from the Settlement. (Doc. 48-1 at 8, 14 ¶¶ 28, 46-48) Similarly, Class Members who wish to comment on or object to the Settlement have 45 days to mail a written objection to the Settlement Administrator, which must include:

> (i)     the objector's full name, signature, address, and telephone number, (ii) a written statement of all grounds for the objection accompanied by any legal support for such objection; and (iii) copies of any papers, briefs, or other documents upon which the objection is based, if any documents are a basis of the objection.

(*Id.* at 6, ¶ 16; *see also id.*, ¶ 51) Class Members will not be permitted to make objections at the Final Approval and Fairness Hearing unless they have submitted a timely written objection that includes notice of intention to appear.

Prior to the hearing for final approval, the Settlement Administrator shall serve the parties and the Court with a declaration due diligence setting forth its compliance with its obligations under the Agreement. The declaration shall include the number of Class Members to whom Notices were sent and the number of Class Members to whom the Notices were delivered.

### III.     Required Revisions to the Notice Packet

The Notice Packet must be modified to include information in this Order, including the date of the hearing for preliminary approval was held, the date and location for the final approval hearing, and deadlines related to objecting to the Settlement and requesting exclusion. (*See* Doc. 48-1 at 34-37) Likewise, the documents must be modified to include the relevant information, including the address and phone numbers of the Settlement Administrator. (*See id.* at 38) If Plaintiffs intend to issue a Spanish language translation of the Notice, they are informed that this Court requires a declaration that the Notice was translated by a certified court interpreter, asserting the translation is an accurate translation of the Court-approved English version of the Notice.

///

## CONCLUSION AND ORDER

Based upon the foregoing, the Court finds the proposed class settlement is fair, adequate, and reasonable. The factors set forth by the Ninth Circuit weigh in favor of preliminary approval of the settlement agreement. Moreover, preliminary approval of a settlement and notice to the proposed class is appropriate "if [1] the proposed settlement appears to be the product of serious, informed, noncollusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078, 1079 (N.D. Cal. 2007) (quoting *Manual for Complex Litigation*, Second § 30.44 (1985)). Here, the proposed settlement agreement satisfies this test.

Accordingly, the Court **ORDERS**:

1. Plaintiffs' request for conditional certification of the Settlement Class is **GRANTED**, and the class is defined follows:

> [A]ll persons employed by Defendant in California as hourly-paid, non-exempt employees who worked in retail locations, including but not limited to, Retail Sales Managers, Retail Assistant Managers, Retails Sales Associates, and Mobile Experts, or functionally equivalent positions at any time from February 3, 2013, through the date of Preliminary Approval.

2. Preliminary approval of the parties' proposed settlement agreement, as modified by this order, is **GRANTED**;

3. The proposed notice plan, as set forth above, is **APPROVED**;

4. Emmanuel Salgado, Gael Grob, David Garcia, and Andre Wong are **APPOINTED** the Class Representatives;

5. Kevin Barnes and Gregg Lander of the Law Offices of Kevin J. Barnes; Raphael Katri of the Law Offices of Raphael A. Katri; Matthew Matern of Matern Law Group, PC; Nazo Koulloukian of Koul Law Firm; Sahag Majarian, II of the Law Offices of Sahag Majarian II; and Dennis Moss and Ari Moss of Moss Bollinger LLP are **APPOINTED** Class Counsel;

6. Rust Consulting, Inc. is **APPOINTED** as the Settlement Administrator, with

responsibilities pursuant to the terms set forth in the Settlement Agreement;

7. Plaintiffs' request for class representative enhancement payments are **GRANTED** preliminarily— subject to a petition and review at the Final Approval and Fairness Hearing— in the amount <u>up to</u> the amount of $15,000 for Emanuel Salgado; $5,000 for Gael Grob, $5,000 for David Garcia, and $5,000 for Andre Wong. Class Members and their counsel may support or oppose this request, if they so desire, at the Final Approval and Fairness Hearing;

8. Class Counsel's requests for fees not to exceed 30% of the gross settlement amount and expenses up to $70,000 are **GRANTED** preliminarily, subject to counsel's petition for fees and review at the Final Approval and Fairness Hearing. Class Members and their counsel may support or oppose this request, if they so desire, at the Final Approval and Fairness Hearing;

9. The petition for attorneys' fees and for class representative enhancement fee **SHALL** be filed no later than **January 15, 2020**;

10. The supplemental filing of claims statistics for the final approval motion **SHALL** be filed no later than **February 24, 2020**;

11. The proposed Notice is preliminarily **APPROVED**, and the parties **SHALL** file a finalized Notice with the required revisions for the Court's approval no later than **December 3, 2019**;

12. Defendant **SHALL** provide the Settlement Administrator with the Class List no later than **December 16, 2019**;

13. The Settlement Administrator **SHALL** mail the approved Class Notice within fifteen days of receiving the Class List, or no later than **December 31, 2019**;

14. A class member who wishes to be excluded from settlement shall postmark the Exclusion Request within 45 days, or no later than **February 14, 2020**;

15. Any objections to or comments on the Settlement Agreement must be filed with the Court and mailed to the Settlement Administrator no later than **February 14, 2020**;

16. A Final Approval and Fairness Hearing is SET for **March 2, 2020** at 9:00 a.m., before

Magistrate Judge Jennifer L. Thurston.  The hearing will be located at the United States Courthouse at 510 19th Street, Bakersfield, California.  At this hearing, the Court shall determine whether the Settlement should be granted final approval as fair, reasonable, and adequate as to the class members.  The Court shall hear all evidence and argument necessary to evaluate the Settlement Agreement and other motions and requests, including the class representative enhancement request and motion for attorneys' fees and costs;

17.     Class Members may appear at the hearing on **March 2, 2020**, in person or through his or her own attorney, to show cause why this Court should not approve the Settlement Agreement, or to object to the motion for attorneys' fees or class member representative enhancement award.  For comments or objections to be considered at the hearing, the Class Member must file comments with the Clerk of this Court indicating briefly the nature of the Class Member's comments, support, or objection.

18.     The Court reserves the right to vacate the Final Approval and Fairness Hearing if no comments or objections are filed with this Court on or before **February 14, 2020**;

19.     The Court reserves the right to continue the date of the Final Approval and Fairness Hearing without further notice to class members; and

20.     The Court retains jurisdiction to consider all further applications arising from or related to the Settlement Agreement.

IT IS SO ORDERED.

Dated:   **November 26, 2019**             **/s/ Jennifer L. Thurston**
                                                        UNITED STATES MAGISTRATE JUDGE